# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

CRAIG CARGILE, ADMINISTRATOR OF
THE ESTATE OF JOHN B. MCLEMORE,

      PLAINTIFF,

    V.

SERIAL PRODUCTIONS, LLC;
THIS AMERICAN LIFE PUBLIC
BENEFIT CORPORATION;
BRIAN REED;
CHICAGO PUBLIC MEDIA, INC.;
SHITTOWN, LLC;
SERIAL PODCAST, LLC; AND
AMERICAN WHATEVER, LLC,

      DEFENDANTS.

CASE NO: 7:18-CV-01167-LSC

JUDGE L. SCOTT COOGLER

**ORAL ARGUMENT REQUESTED**

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Constance M. Pendleton (*pro hac vice*)
Alison Schary (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue NW
Suite 800
Washington, DC 20006
T 202.973.4200
F 202.973.4499
conniependleton@dwt.com
alisonschary@dwt.com

Dennis R. Bailey
Evans Bailey
RUSHTON, STAKELY, JOHNSTON
& GARRETT, P.A.
184 Commerce Street
Montgomery, AL 36104
T 334.206.3234
F 334.481.0031
drb@rushtonstakeley.com
ebailey@rushtonstakeley.com

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...............................................................................................1

ARGUMENT .....................................................................................................4

     I.     Plaintiff Fails to State a Claim Under Alabama's Right of
            Publicity Act.........................................................................................4

            A.     The Plain Meaning of Section 6-5-773 Exempts *S-Town*
                  from Liability, in Keeping with First Amendment Principles....4

            B.     Plaintiff's Proposed Reading Would Nullify Section 6-5-
                  773 and Render the Statute Unconstitutional ............................7

            C.     Plaintiff Improperly Asks This Court to Construe the Act to
                  Exclude *S-Town* from Protection because Plaintiff Believes
                  It Includes "Prurient" Content .................................................13

            D.     Plaintiff's Remaining Claims Fail as a Matter of Law.............18

CONCLUSION .................................................................................................19

i

# INTRODUCTION

Plaintiff's 50-page brief notwithstanding, this is not a difficult case, and it requires no discovery to dismiss as a matter of law. Although one would think from reading its opposition that Plaintiff's claims were for publication of private facts or libel on behalf of *S-Town*'s source and protagonist, John B. McLemore, the Complaint contains no such claims. Nor could it, because libel and invasion of privacy are both "personal claims" that cannot be brought posthumously under Alabama law.[1]

As to the claim actually asserted in this case, the language of Alabama's Right of Publicity Act (the "Act") is unequivocal: it creates a ***categorical exemption*** from liability for certain types of works, including "documentaries" and "artistic or expressive work[s], such as … a literary work, theatrical work, musical work, audiovisual work, motion picture, film, television program, radio program or the like." Ala. Code § 6-5-773. Plaintiff does not dispute that *S-Town* – a seven-chapter audio documentary about isolation, repression, and life in the American South – fits squarely within this illustrative list of exempt works. Accordingly,

---

[1] Plaintiff improperly asserts that Defendants "do not dispute" a number of allegations in the complaint, including that McLemore's identity was used without consent and that the Act grants the Estate the right to bring this claim. Opp. at 25. Because this is a Rule 12 motion, the allegations of the Complaint "must be taken as true" solely for purposes of the motion. *Curry v. Shinseki*, No. 2:09-cv-2441-AKK, 2010 WL 11469020, at *1 (N.D. Ala. Nov. 10, 2010). Defendants do not otherwise concede these or any other facts alleged by Plaintiff. But even taking these allegations as true, Plaintiff cannot prevail on its claims as a matter of law.

Plaintiff does not and cannot plausibly plead a claim under the Act.[2]

Plaintiff twists itself into knots trying to escape the plain meaning of the statute. *First*, it claims that *S-Town* must be a "product" because it has a "producer" (*i.e.*, journalist Brian Reed), and that it must **be** an advertisement because it **has** advertisements adjacent to it – notwithstanding that this argument applies equally to the "television program[s]" and "radio program[s]" that the Act expressly exempts, and that courts have uniformly rejected the same argument when raised by plaintiffs seeking to cast expressive works like *S-Town* as advertisements. Plaintiff's tortured reading would render Section 6-5-773 meaningless and bring the new law into conflict with the First Amendment.

*Second*, Plaintiff tries to graft a "legitimate public interest" test onto the statutory language where none exists. Going further, Plaintiff misreads cases from other jurisdictions to insist that this Court should determine what qualifies as "news or art" and exclude from that definition what Mr. Cargile believes are "prurient matters." None of these cases stands for such a proposition – nor could they, as such a clear content-based restriction on speech would raise serious constitutional concerns. But the Court need not reach that issue, because the Alabama legislature deliberately drafted a statute that avoids putting courts in the

_____

[2] Further, because the Act was enacted after McLemore's death (*see infra* n.19) and is silent as to retroactivity – and at the time of his death, Alabama did not recognize a descendible right of publicity (*see* Ala. Code § 6-5-462) – Plaintiff has no legal basis to bring this claim. *See Alabama Ins. Guar. Ass'n, v. Mercy Medical Ass'n*, 120 So.3d 1063, 1068 (Ala. 2013).

position of determining what is in the "legitimate public interest," instead permitting liability only for true advertisements and purely commercial goods.[3] Because Plaintiff does not and cannot allege that McLemore's identity was used in an advertisement to hawk a product, the Act requires dismissal as a matter of law.

Most remarkably, Plaintiff claims that discovery is needed because "[r]easonable minds clearly disagree about the merits of the podcast," drawing on critical language from some reviews of *S-Town*. Opp. at 25.[4] Plaintiff devotes 13 pages of its Opposition to cherry-picking excerpts from the podcast in order to pronounce – as though Mr. Cargile himself were the arbiter of artistic value – that "[n]one of it is art." Opp. at 18. Respectfully, "the merits of the podcast" is not a "quintessential factual dispute for discovery and trial," as Plaintiff claims. *Id.* Quite the opposite: it is a dispute for the court of public opinion, for curators and reviewers of art and literature, for discussions among listeners with different backgrounds and experiences. Were this Court to construe the Act to protect only those documentaries, movies, radio and television programs, and podcasts that

---

[3] Even if the Alabama statute *did* require a threshold determination that a work must relate to a matter of "public interest" to merit protection (and it does not), *S-Town* more than qualifies, as set forth in Defendants' opening brief. *See* Dkt. 14-1 ("Def. Br.") at 3-5, 14-15, 18.

[4] *S-Town* also received many rave reviews praising it as a ground-breaking work of art and journalism. *See, e.g.*, Spencer Kornhaber, *S-Town Is a Well-Crafted Monument to Empathy*, THE ATLANTIC, Mar. 30, 2017, https://www.theatlantic.com/entertainment/archive/2017/03/s-town-podcast-review-empathy-cultural-divides/521325/ (*S-Town* is "an act of journalism and literature and humanism"); Sarah Larson, *"S-Town" Investigates the Human Mystery*, NEW YORKER, Mar. 31, 2017, https://www.newyorker.com/culture/sarah-larson/s-town-investigates-the-human-mystery (*S-Town* "helps advance the art of audio storytelling, daringly, thoughtfully, and with a journalist's love of good details and fascinating material").

"everyone agrees … [are] award-worthy," as Plaintiff urges (Opp. at 24), it would plainly run afoul of the First Amendment and Alabama's Constitution. "If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas v. Johnson,* 491 U.S. 397, 414 (1989). "What is good literature, what has educational value, what is refined public information, what is good art, varies with individuals as it does from one generation to another." *Hannegan v. Esquire, Inc.*, 327 U.S. 146, 157 (1946).

In sum, this Court can and should apply the plain language of the Act to dismiss Plaintiff's publicity claim as a matter of law, as well as its tag-along claims. Plaintiff cannot state a claim under the Act over *S-Town*, and Plaintiff's attempts to warp the Act's language would render it incomprehensible, overbroad, and unconstitutional. Mr. Cargile may not care for the themes explored in *S-Town*, but that does not make it actionable under Alabama law or the First Amendment.

## ARGUMENT

### I.      Plaintiff Fails to State a Claim Under Alabama's Right of Publicity Act

#### A.      The Plain Meaning of Section 6-5-773 Exempts *S-Town* from Liability, in Keeping with First Amendment Principles

The Court can and should dispose of this case based on the plain language of Section 6-5-773. Alabama law requires that "[w]ords used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where

plain language is used a court is bound to interpret that language to mean exactly what it says." *Blue Cross & Blue Shield of Ala., Inc. v. Nielsen*, 714 So. 2d 293, 296 (Ala. 1998). Where, as here, the statutory language is "unambiguous," "there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect." *Id.*

Section 6-5-773 of the Act "unambiguous[ly]" exempts from liability the alleged use of a person's identity in connection with "documentaries" as well as in "an artistic or expressive work, such as a . . . literary work, theatrical work, musical work, audiovisual work, motion picture, film, television picture, radio program or the like."[5] Under any plain reading of the statutory language, *S-Town* falls within the types of works that are categorically exempt – and notably, Plaintiff does not dispute this. *See* Opp. at 30-34.

Although this is a case of first impression under the Act, it is not a novel issue.[6] The language of Section 6-5-773 is nearly identical to right of publicity laws in several other states which, like Alabama, categorically exempt certain types of works from liability. Courts routinely dismiss claims on the pleadings under these similar laws where, as here, the claim targets a type of work listed in

---

[5] The list of examples – beginning with "such as" and ending with "and the like" – is illustrative and not exclusive with respect to medium. *See Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994).

[6] Plaintiff claims discovery is appropriate because this is the first case brought under the Act. Opp. at 19. That is not a basis to defeat a Rule 12 motion where, as here, the complaint fails to state a claim for relief under the statute. None of Plaintiff's cited cases are to the contrary.

the statutory exemption.  For example, in *Collier v. Murphy*, No. 02 C 2121, 2003 WL 1606637 (N.D. Ill. Mar. 26, 2003), the plaintiff brought a claim under the Illinois statute claiming that his identity was the basis for a cartoon character in a television show.[7]  The court granted the motion to dismiss, holding that the statute "clearly and unambiguously exempts artistic works, including television productions such as [the challenged show], from its coverage."  *Id.* at *3.

Similarly, the court in *Dillinger, LLC v. Electronic Arts Inc.*, 795 F. Supp. 2d 829 (S.D. Ind. 2011), dismissed the plaintiff's claim over a video game's references to gangster John Dillinger, holding that video games were categorically exempt under the Indiana law's carve-out for "literary works"[8] – and explaining that to read the statute more narrowly "would set the right-of-publicity statute up for a constitutional challenge."  *Id.* at 835-36.  *See also Astaire v. Best Film & Video Corp.*, 116 F.3d 1297, 1300-04 (9th Cir. 1997) (categorical exemption for "film" and "television programs" in California's postmortem right-of-publicity law required dismissal of claim over instructional videos).[9]

These cases are consistent with precedent from around the country holding

---

[7] Like the Alabama law, Illinois exempts from liability the use of a person's identity in a "live performance, a single and original work of fine art, play, book, article, musical work, film, radio, television, or other audio, visual, or audio-visual work."  765 ILCS 1075/35(b).

[8] Indiana's law excludes from liability, *inter alia*, "[l]iterary works, theatrical works, musical compositions, film, radio, or television programs." Ind. Code Ann. § 32-36-1-1(c)(1)(A).

[9] California's postmortem right of publicity law excludes from liability, *inter alia*, "[a] play, book, magazine, newspaper, musical composition, audiovisual work, radio or television program." Cal. Civ. Code § 3344.1(a)(2).

that documentaries, biographies, movies, and literature about real people – living

or not, famous or not, authorized or not – are core First Amendment-protected

speech and not subject to liability under state right of publicity laws. *See* Def. Br.

at 11-14 & n. 8 (collecting cases).[10]  Courts have long recognized that the right of

publicity "does not preclude others from incorporating a person's name, features or

biography in a literary work, motion pictures, news or entertainment story."

*Matthews v. Wozencraft*, 15 F.3d 432, 439 (5th Cir. 1994).

### B. Plaintiff's Proposed Reading Would Nullify Section 6-5-773 and Render the Statute Unconstitutional

Plaintiff does not dispute that *S-Town* is a "documentary," "literary work,"

"radio program" or similar work expressly exempted from liability under

Section 6-5-773.  *See* Opp. at 30-34.  Instead, it claims only that *S-Town* falls

within the narrow ***exception*** to the categorical exemption, which reserves liability

for true advertisements.[11]  Plaintiff insists it should survive a motion to dismiss

---

[10] Plaintiff tries to wave aside this weight of precedent based on purported distinctions with no relevance here.  For example, Plaintiff points out that some cases involve celebrities rather than private figures; but the Act applies to both public and private figures ("whether or not famous"), with no distinction for purposes of the exemption.  Plaintiff also notes that some of the cases cited by Defendants involved a "fictionalized" story; but again, nothing in the Act distinguishes between fiction and nonfiction for purposes of the statutory exemption.  Finally, Plaintiff tries to distinguish some of these because they involve what Mr. Cargile personally deems "matter of legitimate public interest."  As explained *infra* at 16-17, the Act does not require this Court to determine what is of "legitimate public interest," and in any event, *S-Town* more than meets the broadly construed and deferential standard used by Alabama courts prior to the Act's enactment and at common law around the country.

[11] Construing similar language in the California postmortem statute, the Ninth Circuit noted this type of exception would apply, for example, to a claim over a car advertisement found in an otherwise exempt magazine.  *Astaire*, 116 F.3d at 1301.

because it recites the statutory language of those exceptions in its Complaint. Opp. at 31. But Plaintiff's "[t]hreadbare recital[] of the elements of [his] cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12 motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[12]

The Court need look no further than *S-Town* itself to see that its interviews with and about McLemore are not "advertisements" for goods or services. Plaintiff does not (and cannot) identify *any instance* in the seven-plus hours of *S-Town* – or any of the third-party advertising breaks – where McLemore's identity is "directly connected to and affirmatively used in a commercial manner to advertise, promote, or endorse a product, good, or service." Ala. Code § 6-5-773(c).

Nor can Plaintiff allege that a seven-hour audio documentary including interviews with McLemore as well as dozens of other individuals – some of whom discuss their own experiences and interactions with him – is, as an artistic work, "such a replica as to constitute a copy of [McLemore's] indicia of identity for the purposes of trade." Ala. Code § 6-5-773(b). To hold that such interviews were "for the purposes of trade" would eviscerate the protections of the statute and impose liability on the practice of journalism. *See Falwell v. Penthouse Int'l, Ltd.*, 521 F. Supp. 1204, 1210 (W.D. Va. 1981) (interview of plaintiff "does not, as a

---

[12] Plaintiff's argument that the applicability of Section 6-5-773 cannot be decided on a Rule 12 motion simply because the Act employs the phrase "fair use," which is also a term of art for the four-factor analysis in Section 107 of the Copyright Act, similarly lacks merit. Opp. at 30-31. Plaintiff has not brought a copyright claim, and the copyright fair-use test has no relevance here.

matter of law, qualify as a trade or advertising purpose"). And while Plaintiff tries to cherry-pick cases to define "purposes of trade" as "merely to attract attention" (Opp. at 32), the Act's commentary defines this phrase by reference to the Restatement (Third) of Unfair Competition § 47, comment c, which explains:

> [T]he use of a person's name or likeness in news reporting, whether in newspapers, magazines, or broadcast news, does not infringe the right of publicity. The interest in freedom of expression also extends to use in entertainment and other creative works, including both fiction and nonfiction. … Similarly, the right of publicity is not infringed by the dissemination of an unauthorized print or broadcast biography. Use of another's identity in a novel, play, or motion picture is also not ordinarily an infringement. The fact that the publisher or other user seeks or is successful in obtaining a commercial advantage from an otherwise permitted use of another's identity does not render the appropriation actionable.

*See* Ala. Code § 6-5-773 (cmt.). This definition makes clear that a documentary about McLemore, including first-person interviews with and about him, cannot be considered "for purposes of trade" and actionable under the Act.[13]

Nor does Plaintiff cite a single case for its contention that *S-Town* is itself a

---

[13] Plaintiff also misstates New York law in its reliance on *Ali v. Playgirl* and *Taggart v. Wadleigh-Maurice, Ltd.* Opp. at 32. In fact, New York courts expressly caution *against* the judicial second-guessing that Plaintiff urges here, recognizing that "questions of 'newsworthiness' are better left to reasonable editorial judgment and discretion" of publishers. *Finger v. Omni Publ'ns Int'l Ltd*, 77 N.Y.2d 138, 142 (1990). Accordingly, New York courts have found publications on a wide range of topics to be outside the scope of liability. *See, e.g.*, *Stephano v. News Grp. Publ'ns, Inc.*, 64 N.Y.2d 174, 184 (1984) (picture of plaintiff wearing a bomber jacket in a column about fashion trends and deals); *Creel v. Crown Publishers*, 115 A.D.2d 414 (N.Y. App. 1985) (picture of plaintiffs illustrating guide to nude beaches); *Smigo v. NYP Holdings, Inc.*, 2008 WL 4918667 (N.Y. Sup. Nov. 12, 2008) (gossip column reporting that fiancee of radio personality engaged in an "X-rated romp"). There is no question that *S-Town* would be exempt from liability under New York law.

"product."  Instead, it proffers the curious argument that the award-winning

podcast must be a "product" because it was "produced" by "producers" for a

"production" company.  Opp. at 28.  Of course, that logic applies equally to

television shows, movies, and radio programs – which Section 6-5-773 specifically

states are "not a violation of" the Act.  If the Court were to accept Plaintiff's overly

broad construction of the term "product," it would effectively nullify Section 6-5-

773(b)'s illustrative list of works that are "not a violation" of the Act.  Such a

reading would violate the "cardinal principle of statutory construction" requiring

that "no clause, sentence, or word shall be superfluous, void, or insignificant."

*Duncan v. Walker*, 533 U.S. 167, 174 (2001) (citations omitted); *see also TRW Inc.*

*v. Andrews*, 534 U.S. 19, 31 (2001) (declining to construe statute such that its

"express exception would be rendered 'insignificant, if not wholly

superfluous'").[14]

    Commentary to the Act specifies that "***the Plaintiff will be required to show***

that the requested relief is not an abridgement of free speech rights." Ala. Code

§ 6-5-773 (cmt) (emphasis added).  Plaintiff fails to meet this burden.  Television

and radio programs, documentaries and movies, whether made for profit, or not,

enjoy broad First Amendment protection.  "[M]otion pictures, programs broadcast

---

[14] Indeed, courts construing similar statutes have rejected this same argument. *See Collier*, 2003
WL 1606637, at *2 (rejecting plaintiff's claim that television show was a "commercial product"
as "an attempt to overcome … the clear language" of the statute, noting that plaintiff's reading
"would nullify [the statutory exemption's] entire purpose").

by radio and television, and live entertainment, such as musical and dramatic works fall within the First Amendment guarantee." *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 65 (1981). *See also* Def. Br. at 11-12. That these creative works generate income does not diminish their constitutional protection. *See* Def. Br. at 15-16 (citing cases).[15]

Plaintiff fails to cite a single case for his conclusory assertion that a television show, radio program, play, movie, or the like is *itself* an advertisement simply because it is supported by third-party advertising or corporate sponsors. Courts have routinely rejected such arguments. For example, in *Stewart v. Rolling Stone LLC*, 181 Cal. App. 4th 664 (2010), a fold-out magazine feature about independent bands was deemed not to be commercial speech notwithstanding that it also included a third-party ad for Camel cigarettes adjacent to the editorial content. Recognizing that "advertising naturally assists in the financing of the magazine," the court held that the magazine was "merely the medium through which commercial messages are delivered by the actual commercial speakers, namely, the advertisers themselves." *Id.* at 684. *See also Gautier v. Pro-Football, Inc.*, 304 N.Y. 354, 357-59 (1952) (football halftime program that included

---

[15] *S-Town* was available free for anyone to download; but even if listeners had to purchase it, it is "beyond serious dispute" that the sale of speech alone does not render it "commercial" for purposes of the First Amendment. *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 761 (1976) ("speech does not lose its First Amendment protection because money is spent to project it"). "That books, newspapers, and magazines are published and sold for profit does not prevent them from being a form of expression whose liberty is safeguarded by the First Amendment." *Time, Inc. v. Hill*, 385 U.S. 377, 397 (1967).

plaintiff's performance was not an advertisement, even though program was sponsored by company whose ads aired before and after halftime).[16]

Plaintiff's overly broad construction of "advertisement" to include any work *supported by* advertising would impose liability under the Act on any art exhibit with a corporate sponsor; any play that includes advertising in its playbill; every television or radio show with 30-second ad breaks; and every piece of journalism published in a newspaper, magazine, or website that also contains advertising. Such a reading would contradict well-established principles of First Amendment jurisprudence holding that such works are not "commercial" and enjoy the highest protection under the law, and it would render the express exemption in Section 6-5-773 – which categorically protects these types of works from liability – meaningless.  Accordingly, this Court should reject Plaintiff's proposed reading of the Act.  *Clark v. Martinez*, 543 U.S. 371, 380-81 (2005) (courts should reject statutory interpretation that "would raise a multitude of constitutional problems"); *Duncan*, 533 U.S. at 174.

---

[16] Indeed, courts have rejected Plaintiff's argument even where the work in question was created by a corporate relations department – facts far afield from *S-Town*.  In *Benavidez v. Anheuser Busch, Inc.*, 873 F.2d 102 (5th Cir. 1989), the corporate relations department of a beer company produced a documentary titled "Heroes" recounting the exploits of Hispanic Congressional Medal of Honor recipients (including the plaintiff), which stated in credits that it was "made possible by Anheuser Busch."  *Id.* at 104.  Notwithstanding the corporate sponsorship and that it was shown at events promoting the company's products, and even if the company's goal was "an attempt to capitalize on [plaintiff]'s good name and reputation and thereby benefit commercially from it" – the same arguments Plaintiff advances here – the Fifth Circuit held these facts "would not transform" the documentary into an advertisement for Anheuser Busch.  *Id*. at 103.

## C. Plaintiff Improperly Asks This Court to Construe the Act to Exclude *S-Town* from Protection because Plaintiff Believes It Includes "Prurient" Content

At bottom, Plaintiff asks this Court to hold that *S-Town* enjoys no constitutional or statutory protection because Plaintiff is uncomfortable with certain portions of the documentary and feels they are "prurient" and "loathsome." Opp. at 39-40. But Plaintiff's squeamishness around discussions of McLemore's sexuality, or Tyler Goodson's video of his tattooing sessions with McLemore, has nothing to do with the right of publicity.[17] Instead, what Plaintiff describes is a claim for publication of private facts[18] – and any such potential claim died with McLemore.[19] *See Fitch v. Voit*, 624 So. 2d 542, 543-44 (Ala. 1993) (defamation and invasion of privacy are "personal claim[s]" that "cannot be brought after the

---

[17] It is noteworthy that the parts of *S-Town* that Plaintiff highlights as most offensive (Goodson's tattooing audio, the interview with Long about his relationship with McLemore) come from interviews and newsgathering with *third parties* after McLemore's death. Mr. Cargile seems to believe he is entitled to control not just the use of McLemore's name, voice, and image, but also what *other people say about him*. Plaintiff's argument, if credited, would impose a deep chill on the practice of journalism. "Exposure of the self to others in varying degrees is a concomitant of life in a civilized community. The risk of this exposure is an essential incident of life in a society which places a primary value on freedom of speech and of press." *Time, Inc.*, 385 U.S. at 388.

[18] The tort applies to "one who gives publicity to a matter concerning the private life of another," if the matter "would be highly offensive to a reasonable person" and "is not of legitimate concern to the public." *Johnston v. Fuller*, 706 So. 2d 700, 703 (Ala. 1997). It traditionally covers "intimate details" such as "sexual relations … family quarrels, many unpleasant or disgraceful or humiliating illnesses, most intimate personal letters, most details of a man's life in his home, and some of his past history that he would rather forget." Restatement (Second) of Torts § 652D cmt. b (1977).

[19] There was no pending claim at the time of McLemore's death – nor could there have been. McLemore died on June 22, 2015. Compl. ¶ 17. The Act came into effect on August 1, 2015. *S-Town* was published nearly two years later, on Mar. 28, 2017. Compl. ¶ 20. The administrator of the Estate was not appointed until June 19, 2017, more than two months after *S-Town* was released. Compl. Ex. 1.

death of the alleged victim"); *Cont'l Nat'l Indem. Co. v. Fields*, 926 So. 2d 1033, 1037 (Ala. 2005) (unless extended by statute, unfiled causes of action for "personal" torts do not survive the person's death).[20] Moreover, facts *about* McLemore and his life are not "attributes … that serve to identify that person" protected by the statute. Ala. Code § 6-5-771(1). "The narrative of an individual's life, standing alone, lacks the value of a name or likeness that the misappropriation tort protects." *Matthews*, 15 F.3d at 438. *See also O'Grady v. Twentieth Century Fox Film Corp*, No. 5:02 CV 173, 2003 WL 24174616, *7 (E.D. Tex. Dec. 19, 2003) (holding that protection of name or likeness under Texas law "does not include a person's life story").[21]

Nevertheless, Plaintiff goes so far as to assert – incorrectly – that the Eleventh Circuit's decision in *Toffoloni v. LFP Publishing Group LLC*, 572 F.3d 1201 (11th Cir. 2009) requires this Court to find that "publication of prurient matters" does not qualify as "news or art." Opp. at 39. But the issue in *Toffoloni* was not that the photos in question were offensive, as Plaintiff suggests; it was that they had no relation to the article in the magazine they were purportedly

---

[20] The Act extends *only* a claim for right of publicity beyond the death of the individual. Ala. Code § 6-5-771.

[21] *O'Grady*, upon which Plaintiff heavily relies (Opp. at 44-47) – and which Defendants' counsel litigated – actually *supports* dismissal of Plaintiff's claim. The *O'Grady* court dismissed the claim against Twentieth Century Fox over the movie "Behind Enemy Lines," which is the work analogous to *S-Town* here. *Id.* at *7. Plaintiff quotes from a different part of the decision dealing with claims relating to commercial "tie in" materials.

illustrating.  Indeed, to illustrate this distinction, the Court pointed to the ruling in another Georgia case, *Waters v. Fleetwood*, 212 Ga. 161 (1956), which found no liability for a newspaper that published photographs of a murdered child's body along with an article about the murder and investigation.[22]

Noting that the 20-year-old nude photos of the deceased model were teased in all-capital letters on the cover of *Hustler* and promoted as "EXCLUSIVE NUDE PICS" alongside a story that had nothing to do with her nude modeling, the court found that the "photographs were not incidental to the article," but "[r]ather, the article was incidental to the photographs."  *Id.* at 1209.  Here, by contrast, Plaintiff cannot plausibly contend that the seven-hour documentary of *S-Town* was simply an "incidental" vehicle whose main purpose was to broadcast audio of McLemore's tattooing or to tell the world about McLemore's sexuality.  Rather, the sections Plaintiff objects to are in fact central parts of the documentary itself and fundamental to its overarching themes, not ancillary to it.[23]

---

[22] Nor is *Toffoloni*, which involved a question of Georgia common law, "binding" on this Court's interpretation of the Alabama statute.  The only binding precedent would be a decision of the Alabama Supreme Court, and there are none.  *Riley v. Kennedy*, 553 U.S. 406, 425 (2008) ("A State's highest court is unquestionably 'the ultimate expositor of state law.'") (citation omitted).

[23] For example, Reed uses audio of the tattooing session in the final episode to compare the ways both Goodson and McLemore discussed these sessions, which they called "church."  The audio is used to document the end of their relationship, which is a primary topic of the podcast, as well as to explore issues of male friendship, of repression and sexual identity, and of depression.  It is also integral to investigating the events that led to McLemore's suicide, one of the podcast's fundamental questions.  *See generally* Dkt. 14-8 at 13-25, Dkt. 14-9 (Ch. 7) at 27:56-59:58; *see also, e.g.*, Dkt. 14-4 at 16-19, Dkt. 14-9 (Ch. 3) at 41:14-50:45.  Similarly, details about McLemore's non-heterosexual encounters are not only relevant, they form the basis for the entire

Plaintiff's remaining arguments are similarly without merit. For example, the statute contains no requirement that this Court determine whether *S-Town* concerns a "matter of legitimate public interest." Opp. at 39, 41.[24] But even if it did, *S-Town* would plainly meet it. Alabama courts have construed the scope of what is in the "public interest" broadly, encompassing "information concerning interesting phases of human activity and … all issues about which information is needed or appropriate so that individuals may cope with the exigencies of their period." *J.C. v. WALA-TV, Inc.*, 675 So. 2d 360, 362 (Ala. 1996).[25] *S-Town* fits easily within this broad definition. *See, e.g.,* Def. Br. at 3-5, 14-15, 18.

Plaintiff invites this Court to sit in judgment of the "merits" of *S-Town*. Opp. at 25. But "[c]ourts should be chary of deciding what is and what is not news," *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 561

---

sixth chapter, which explores the experience of gay men in the rural South, drawing primarily on an on-the-record interview with Olin Long, who contacted Reed and spoke at length about his own relationship with McLemore. His account also is directly related to the fundamental themes of the podcast and the events that precipitated McLemore's death. *See* Dkt. 14-8, Dkt. 14-9 (Ch. 7).

[24] Among the types of works categorically excluded from liability in Section 6-5-773 are a "news, public affairs, or public interest account" – but in light of the other examples in the list, it is clear that this refers to a *type* of work, and does not require some additional finding that the content of the news report be "legitimately" of public interest. Nowhere is there any reference to "public interest" or "newsworthiness" in the exemption for "artistic work[s]," which include literary works and radio programs.

[25] *See also Rosa & Raymond Parks Inst. for Self Dev. v. Target Corp.*, 90 F. Supp. 3d 1256, 1264 (M.D. Ala. 2015) (public interest "does not only extend to news in the sense of current events, but 'extends far beyond to include all types of factual, educational, and historical data, or even entertainment and amusement, concerning interesting phases of human activity in general'") (citations omitted), *aff'd*, 812 F.3d 824 (11th Cir. 2016).

(1985), and they are "not concerned with establishing canons of good taste for the press or the public." *Neff v. Time, Inc.*, 406 F. Supp. 858, 860 (W.D. Pa. 1976) (citation omitted). The Act does not impose content-based restrictions on the works that it protects. Nor could it, without running afoul of the First Amendment. "At the heart of the First Amendment lies the principle that each person should decide for himself or herself the ideas and beliefs deserving of expression, consideration, and adherence." *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 641 (1994). "Any restriction on expressive activity because of its content would completely undercut the 'profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open.'" *Police Dep't of Chi. v. Mosley*, 408 U.S. 92, 95 (1972) (citing *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964).

Plaintiff also incorrectly asserts that "the First Amendment does not apply" to this action (Opp. at 37), citing *Zacchini v. Scripps-Howard Broad. Co.*, 433 U.S. 562 (1977). Precisely the opposite: *Zacchini* recognized that "entertainment, as well as news, enjoys First Amendment protection." *Id.* at 578-79. *Zacchini* dealt with the narrow issue of appropriation of a person's "entire performance," not implicated here, and Plaintiff points to no case citing *Zacchini* to hold that a person

interviewed for or spoken about in a documentary must be paid for that reference.[26]

Moreover, *Zacchini* specifically held that a state "may as a matter of its own law" privilege certain types of publications, even if not required by the First Amendment. *Id*. at 578-79. Here, Alabama has chosen "as a matter of its own law" to exempt works like *S-Town* from liability for a right of publicity claim. Accordingly, *Zacchini* presents no obstacle to dismissing Plaintiff's claim.

## D.   <u>Plaintiff's Remaining Claims Fail as a Matter of Law</u>

Plaintiff's remaining claims also fail. *First*, Plaintiff does not point to *any* right of publicity cases, from this district or elsewhere, where a court allowed an unjust enrichment claim to proceed. Courts routinely dismiss such claims where, as here, they are "duplicative or derivative of the[] right of publicity claims." *Ruffin-Steinback v. dePasse*, 267 F.3d 457, 462-63 (6th Cir. 2001). *See also Rosa & Raymond Parks Inst.*, 812 F.3d at 832 n.17 (affirming dismissal of unjust enrichment claim as "derivative of [the] right-of-publicity claim"); *Moore v. Weinstein Co.*, No. 3:09-CV-00166, 2012 WL 1884758, at *49 (M.D. Tenn. May 23, 2012), *aff'd*, 545 F. App'x 405 (6th Cir. 2013) (unjust enrichment claim failed where it "essentially overlap[ped] with" publicity claim).

Plaintiff likewise fails to support its request for a constructive trust with a

---

[26] To the contrary, since *Zacchini*, courts across the country have routinely applied the First Amendment to reject state right of publicity claims where, as here, the plaintiff claims that his or her identity was used in a book, movie, television program, biography, documentary, or other expressive work. *See* Def. Br. at 11-14 & n.18.

legitimate cause of action. A constructive trust is "an equitable remedy; and a request to impose such a trust is not a cause of action that will stand independent of some wrongdoing." *Radenhausen v. Doss*, 819 So. 2d 616, 620 (Ala. 2001). The appellate court reversed in *Radenhausen* because it found the allegations of wrongdoing sufficient to support the constructive trust *remedy*, not because it concluded that a constructive trust is a separate cause of action. *Id.* at 620-22.

Similarly, declaratory and injunctive relief do not "resolve" any dispute because they, too, are types of relief. As stated in Plaintiff's only cited case, "[t]here must be a bona fide justiciable controversy" to merit declaratory relief. *Privilege Underwriters Reciprocal Exch. v. Grayson*, 226 So. 3d 653, 657 (Ala. 2016) (noting declaratory relief "is especially useful" to determine rights under a contract). *Id.* at 658. Such relief is not proper where, as here, there is no contract between the parties and Plaintiff has not alleged a bona fide controversy.

## CONCLUSION

In sum, the Complaint fails to state a claim as a matter of law. No discovery is needed to determine that *S-Town* falls within the Act's exemption for works such as documentaries, literature, and radio programs (as Plaintiff concedes), and the Court need look no further than the content of *S-Town* itself to see that its interviews with John McLemore are not "advertisements." To construe the Act otherwise, as Plaintiff urges, would violate well-established canons of statutory

construction and conflict with the First Amendment.  Accordingly, the Court

should grant Defendants' motion to dismiss the Complaint with prejudice.


Dated:  September 14, 2018           Respectfully submitted,


                                    /s/ Constance M. Pendleton
                                    Constance M. Pendleton (*pro hac vice*)
                                    Alison Schary (*pro hac vice*)
                                    DAVIS WRIGHT TREMAINE LLP
                                    1919 Pennsylvania Avenue NW, Suite 800
                                    Washington, DC 20006
                                    T 202.973.4200
                                    F 202.973.4499


                                    Dennis R. Bailey
                                    Evans Bailey
                                    RUSHTON, STAKELY, JOHNSTON &
                                    GARRETT, P.A.
                                    184 Commerce Street
                                    Montgomery, AL 36104
                                    T 334.206.3234
                                    F 334.481.0031


                                    *Attorneys for Defendants*

Of counsel:

Rushton Stakely Johnston & Garrett, P.A.
184 Commerce Street
Post Office Box 270
Montgomery, AL 36101-0270
T 334.206.3234
F 334.481.0031
drb@rushtonstakely.com (email)

## CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2018, a copy of the foregoing was served by filing the same through the CM/ECF system, which will send a copy to the following individuals:

        Richard J. R. Raleigh, Jr.
        Christopher L. Lockwood
        Wilmer & Lee, P.A.
        100 Washington Street, Suite 100
        Huntsville, AL 35801
        (256) 533-0202
        rraleigh@wilmerlee.com
        clockwood@wilmerlee.com

        R. Cooper Shattuck
        Cooper Shattuck, LLC
        P.O. Box 3142
        Tuscaloosa, AL 35403
        (877) 442-6673
        cooper@coopershattuck.com

                */s/ Constance M. Pendleton*
                Constance M. Pendleton