# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| CRAIG CARGILE, *Administrator of the Estate of John B. McLemore,* )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SERIAL PRODUCTIONS, LLC, *et al.,* )<br>)<br>Defendants. ) | 7:18-cv-01167-LSC |

## MEMORANDUM OF OPINION AND ORDER

Before the Court is Defendants, Serial Productions, LLC, This American Life Public Benefit Corporation, Brian Reed, Chicago Public Media, Inc., Shittown, LLC, Serial Podcast, LLC, and American Whatever, LLC's, (collectively "Defendants'") Motion to Dismiss. (Doc. 14.) Plaintiff has timely filed his opposition. (Doc. 22.) The motion is fully briefed and ripe for review. For the reasons stated below, Defendants' Motion to Dismiss (doc. 14) is denied.

### I.  BACKGROUND[1]

---

[1] In evaluating a motion to dismiss, the Court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff." *Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1275 (11th Cir. 2012). The following facts are, therefore, taken from Plaintiff's allegations contained in the Complaint, and the Court makes no ruling on their veracity.

In 2012, John B. McLemore ("McLemore") emailed the staff of *This American Life*, which is owned and produced by Defendant This American Life Public Benefit Corporation ("*This American Life*"), and asked them to investigate a suspected murder in his hometown of Woodstock, Alabama. In response to McLemore's inquiry, Brian Reed ("Reed") and other Defendants exchanged emails and phone calls with McLemore about investigating his claims. After a series of exchanges, Reed traveled to Bibb County, Alabama to investigate the alleged murder. The events that followed McLemore's initial contact with *This American Life* were documented in the podcast, *S-Town*. *S-Town,* billed as the "unearthing of the mysteries of one man's life," consists of seven hour-long episodes with advertising breaks. Each episode features original narration by Reed, excerpts from interviews and recorded conversations between Reed and McLemore, and additional interviews Reed conducted with other individuals in Bibb County.

*S-Town* begins with original narration by Reed. In this opening segment, Reed describes in intricate detail the process of repairing a clock before transitioning to *S-Town*'s main story: McLemore. In the first episode, Reed travels to Alabama at McLemore's behest to investigate the murder McLemore alleged occurred in Woodstock. In the second episode, Reed reveals that, after his investigation, he has concluded that no murder occurred. Reed communicates this

information to McLemore and the two fall out of contact. However, the second episode ends with the shocking revelation that McLemore has committed suicide.

After Reed became aware of McLemore's death, he reached out to McLemore's family and friends to find out more about McLemore and his life up until the suicide. The episodes of *S-Town* that follow detail the information Reed gathered both about McLemore and his death. Through past interviews with McLemore himself as well as more recent interviews with those who knew McLemore, Reed explores "McLemore's sexual orientation and experiences, depressed thoughts, suicidal ideations, financial affairs, physical and mental health issues, and his interpersonal relationships with friends, family members, and sexual partners." (Doc. 1-1 ¶21.) Reed's exploration of these subjects in *S-Town* uses interviews and recordings that, at times, contain graphic descriptions of events in McLemore's life and death.

For example, in Episode 3 Reed interviews two individuals about the details of McLemore's death. These interviews feature graphic descriptions of McLemore's suicide and how his body appeared after it was discovered. In Episode 6 Reed explores, at times in great detail, the nature of McLemore's sexuality and speculates on McLemore's sexual orientation based not only on supposedly off the

record discussions with McLemore but also interviews with other individuals who claim to have been privy to the details of McLemore's sex life.

McLemore's mental health is also explored in detail in both Episodes 4 and 7 of *S-Town*. In Episode 4, it is revealed that McLemore struggled in the past with mental health issues and that he confided in Reed prior to his death that he had been considering suicide, but that Reed had not reported it. Following up on Reed's initial exploration of McLemore's mental health issues, *S-Town*'s final episode explores, among other things, instances of self-harm that McLemore is alleged to have undertaken including paying to have his nipples tattooed with an empty needle. The episode contains an audio recording of one of these sessions, which McLemore is alleged to have referred to as "Church."

To date, S-Town has been downloaded more than 80 million times. Defendants are alleged to receive revenues from advertisers for each download. Additionally, Defendants are alleged to have used McLemore's indicia of identity to advertise and promote the products, goods, and services of advertisers including Squarespace, Blue Apron, and Quicken Loans/Rocket Mortgage.

## II.   STANDARD

In general, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). However, in

order to withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint "must plead enough facts to state a claim to relief that is plausible on its face." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1347– 48 (11th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Stated another way, the factual allegations in the complaint must be sufficient to "raise a right to relief above the speculative level." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010). A complaint that succeeds in "identifying facts that are suggestive enough to render [the necessary elements of a claim] plausible" will survive a motion to dismiss. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1296 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556) (internal quotation marks omitted).

In evaluating the sufficiency of a complaint, this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. This Court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* Review of the complaint is "a context-specific task that requires [this Court] to draw on its

judicial experience and common sense." *Id.* If the pleading "contain[s] enough information regarding the material elements of a cause of action to support recovery under some 'viable legal theory,'" it satisfies the notice pleading standard. *Am. Fed'n of Labor & Cong. of Indus. Orgs. v. City of Miami*, 637 F.3d 1178, 1186 (11th Cir. 2011) (quoting *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683–84 (11th Cir. 2001)).

"In general, if it considers materials outside of the complaint, a district court must convert the motion to dismiss into a summary judgment motion." *SFM Holdings, Ltd. v. Banc. of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010). However, a "district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *See id.* (citing *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005)). Both parties incorporate by reference and rely upon the expressive contents of *S-Town* in their pleadings. Additionally, neither party debates the authenticity of the expressive contents of *S-Town*.[2] Thus, the Court will take the expressive contents of *S-Town* into consideration.

---

[2] Cargile asserts that *S-Town* contains fictionalized descriptions of McLemore's life but does not contest the authenticity of the expressive contents of *S-Town*. Cargile, however, does take issue with the audio recordings of the advertisements that accompany the audio recordings of *S-Town* that Defendants submitted. (*See* Doc. 22 at 6 n. 2.);(Doc. 14-8.)

## III. DISCUSSION

Plaintiff Craig Cargile ("Plaintiff" or "Cargile"), as administrator of McLemore's Estate, brings this claim on McLemore's behalf, alleging that Defendants' *S-Town* podcast violates Alabama's Right of Publicity Act (the "Act"), Ala. Code § 6-5-770, *et seq*. The Act[3] states in part:

> Except as otherwise provided in this article, any person or entity who uses or causes the use of the indicia of identity of a person, [1] on or in products, goods, merchandise, or services entered into commerce in this state, or [2] for purposes of advertising or selling, or soliciting purchases of, products, goods, merchandise, or services, or [3] for purposes of fund-raising or solicitation of donations, or [4] for false endorsement, without consent shall be liable under this article to that person, or to a holder of that person's rights.

Ala. Code § 6-5-772(a). Liability exists "without regard as to whether the use is for profit or not for profit." *Id.* § 6-5-772(b). The Act cautions that it is not to be interpreted as to "allow for an abridgement of free speech rights under the First Amendment of the United States Constitution and Section 4 of the Constitution of Alabama of 1901." *Id.* § 6-5-773(a). In keeping with this guidance, the Act exempts the "fair use" of indicia of identity in public interest works and artistic works. *See id.* § 6-5-773 (b) ("It is a fair use and not a violation of Section 6-5-772 if the use of the indicia of identity. . . is part of an artistic or expressive work, such as a live

---

[3]    The Act was enacted in 2015. Prior to the Act's passage, Alabama recognized a common-law right of privacy, which included protections for the unauthorized use of a person's identity for commercial purposes. *See Bell v. Birmingham Broad. Co., Inc.*, 96 So. 2d 263, 265 (Ala. 1957).

performance, work of art, literary work, theatrical work, musical work, audiovisual work, motion picture, film, television program, radio program or the like. . . .").

In a nutshell, Cargile alleges that Defendants' use of McLemore's indicia of identity in *S-Town* violates the Act because Defendants have received advertising revenues from each download of *S-Town*. To the extent Cargile brings suit on this ground, the Court is doubtful that this would be sufficient to state a claim under this Act, given that *S-Town* arguably falls within the Act's artistic work exemption.

However, in paragraph 23 of the complaint, Cargile specifically alleges:

- By and through the *S-Town* podcast, Defendants have affirmatively used McLemore's indicia of identity in a commercial manner to advertise, promote, or endorse the products, goods, and services of various advertisers. On information and belief, Defendants have used McLemore's indicia of identity to advertise and promote the products, goods, and services of advertisers such as Squarespace, Blue Apron, and Quicken Loans/Rocket Mortgage. On information and belief, these commercial advertisers have paid money to Defendants to obtain advertising for their products and services when the podcast is played.

(Doc. 1-1 ¶ 23) Taking these allegations as true, the Court cannot conclusively determine that Defendants' use of McLemore's indicia of identity is non-actionable as the contents of any and all the alleged advertisements or promotions allegedly using McLemore's indicia of identity are not before this Court. Although Cargile refers to the *S-Town* podcast generally in his counts, the Court assumes that Plaintiff's general reference to the podcast includes both *S-Town*'s expressive

contents and the advertisements that interject at regular intervals throughout each episode as well as any other advertisements or promotion materials related to *S-Town*. Therefore, Cargile has stated a plausible claim for relief under the Act, and Defendants' motion to dismiss is due to be denied.[4]

Defendants also request that this Court dismiss Cargile's claims for (1) unjust enrichment, (2) constructive trust/accounting, and (3) declaratory judgment/injunctive relief. Defendants seek dismissal of Cargile's unjust enrichment claim because it is derivative of McLemore's claim pursuant to the Act. Because the Court is not dismissing McLemore's claim under the Act at this time, it declines to also dismiss Cargile's unjust enrichment claim.

Defendants also seek dismissal of Cargile's claims for constructive trust/accounting and declaratory judgment/injunctive relief because they are remedies and not causes of action. Defendants are correct to the extent Plaintiff seeks such remedies "independent of some wrongdoing." *Radenhausen v. Doss*, 819 So. 2d 616, 620 (Ala. 2001). However, Cargile's additional requests for relief are

---

[4] Defendants raise for the first time in a footnote in their reply brief an argument that the Act does not apply retroactively. (Doc. 32 at 2 n.2.) Since this argument was raised for the first time in Defendants' reply brief with no opportunity for Plaintiff to respond, it would be improper for the Court to take up this argument at this time. *See Carter v. Austal, U.S.A, L.L.C.*, No. 08–00155–KD–N, 2011 WL 3203761, at *5 (S.D. Ala. Apr. 1, 2008) ("[defendants] cannot assert new allegations or arguments raised for the first time on Reply"); *Abrams v. Ciba Specialty Chemicals Corp.*, 663 F. Supp. 2d 1220, 1232 n.16 (S.D. Ala. 2009) ("new arguments are impermissible in reply briefs.").

not made independent from Defendants' alleged wrongdoing under the Act. Therefore, Cargile's requests for these forms of equitable relief are not due to be dismissed at this time.

### IV. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss (doc. 14) is denied.

**DONE** and **ORDERED** on March 22, 2019.

L. Scott Coogler
United States District Judge

195126