# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| CRAIG CARGILE, ADMINISTRATOR OF THE ESTATE OF JOHN B. MCLEMORE, <br><br> PLAINTIFF, <br><br> v. <br><br> SERIAL PRODUCTIONS, LLC; THIS AMERICAN LIFE PUBLIC BENEFIT CORPORATION; BRIAN REED; CHICAGO PUBLIC MEDIA, INC.; SHITTOWN, LLC; SERIAL PODCAST, LLC; AND AMERICAN WHATEVER, LLC, <br><br> DEFENDANTS. | CASE NO: 7:18-CV-01167-LSC <br><br> JUDGE L. SCOTT COOGLER <br><br> **ORAL ARGUMENT REQUESTED** |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12(C)

Constance M. Pendleton (*pro hac vice*)
Alison Schary (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue, N.W.
Suite 800
Washington, DC 20006
T 202.973.4200
F 202.973.4499
conniependleton@dwt.com
alisonschary@dwt.com

Dennis R. Bailey
Evans Bailey
RUSHTON, STAKELY, JOHNSTON
& GARRETT, P.A.
184 Commerce Street
Montgomery, AL 36104
T 334.206.3234
F 334.481.0031
drb@rushtonstakeley.com
ebailey@rushtonstakeley.com

*Attorneys for Defendants*

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

ARGUMENT .........................................................................................................3

I. Plaintiff Fails to Establish that the Act Applies Retroactively.........................3

    A. The Act's Definition of "Person" Does Not Confer Retroactivity ...................................................................................3

    B. The Act is Substantive in Nature, Not Remedial. ................................7

    C. Applying the Act Retroactively Would Contravene Probate Law. ..................................................................................................8

II. The *S-Town* Podcast Is Exempt From Liability Under the Act.......................9

CONCLUSION ....................................................................................................10

# INTRODUCTION

In his Response, Plaintiff concedes two material and case-dispositive facts: (1) the Alabama Right of Publicity Act was not in effect at the time of John B. McLemore's death;[1] and (2) at the time of McLemore's death, the right of publicity under Alabama common law "died with the person." Resp. at 2, 11. Because, as Plaintiff admits, McLemore did not possess a postmortem right of publicity at the time of his death, Plaintiff lacks standing to assert a claim under the Act unless the Act applies retroactively.

Plaintiff does not identify any express language in the Act stating that it applies retroactively, nor any legislative history indicating such an intent. Instead, Plaintiff hangs his case on: (1) a tortured reading of the Act's definition of "person" that would dramatically expand liability under the Act; (2) a single non-binding case from Nevada interpreting that state's right-of-publicity statute, which is both distinguishable and contradicted by other courts; and (3) a misreading of Alabama probate law. None of these arguments support his position. Thus, this Court should apply the presumption against retroactivity and conclude that Plaintiff lacks standing to bring this claim under the Act.

---

[1] The fact that the Act was signed into law at the time of McLemore's death is irrelevant. An individual cannot enforce a right based on a statute that has been signed into law, but has not yet taken effect. *See, e.g.*, *Zea v. Everhome Mortg. Co.*, No. 2:11-CV-249-FtM-36SPC, 2012 WL 13098078, at *2 (M.D. Fla. Jan. 20, 2012) (dismissing claims based on proposed amendments to a statute that had not yet taken effect). Plaintiff cites no case law to the contrary.

1

Relying solely on two outdated cases from New York courts applying that state's right-of-publicity statute, Plaintiff also incorrectly argues that, even if the *S-Town* podcast is an artistic work under the Act, it is still actionable because it uses McLemore's identity "for purposes of trade." Not so. The Act's own commentary and the cited sources make clear that "use for purposes of trade" does not include use in "news reporting, commentary, entertainment, works of fiction or nonfiction, or in advertising that is incidental to such uses." Because Plaintiff's argument fails, there is no need for discovery on the issue of whether the podcast itself is actionable—a separate issue from whether third-party advertisements associated with the podcast are actionable. Accordingly, if the Court declines to dismiss the case on standing grounds, Defendants request a ruling on this limited issue, which would significantly narrow the scope of discovery.[2]

---

[2] Plaintiff incorrectly claims that Defendants are "stiff-arming" him in discovery. Resp. 15 n.9. To the contrary, Plaintiff agreed to a stay of discovery in the parties' joint Rule 26(f) report (D.E. 20) pending resolution of Defendants' Rule 12(b)(6) motion. Plaintiff served 58 document requests, more than twice what the Court allowed in its June 5, 2019 scheduling order, including many wildly overbroad requests. When Defendants objected, the parties conferred in May 2019 and Plaintiff agreed to narrow these requests and Defendants agreed to produce certain categories of documents, which are still voluminous. As they advised Plaintiff, Defendants are working with a professional e-discovery vendor to collect, process, and review these materials for production.

## ARGUMENT

I. **Plaintiff Fails to Establish that the Act Applies Retroactively.**

   A. **The Act's Definition of "Person" Does Not Confer Retroactivity.**

Plaintiff argues that the Act's definition of "person" as a "natural or deceased natural person" disposes of the need for any statutory language or legislative intent indicating retroactivity. This argument ignores that seven of the eight states that have enacted right-of-publicity statutes that operate retroactively have included language *expressly stating so*, even though their statutes also apply to both living and deceased individuals.[3] These state statutes include language expressly providing for retroactivity and specifying precise dates,[4] because it would be insufficient to—as Plaintiff suggests—enact a law that simply applies to both living and deceased persons, and expect courts to interpret such a law to apply retroactively. Although, as Plaintiff admits, the Alabama legislature surveyed the laws from these other states

---

[3] The one exception—Nevada's statute—is distinguishable as set forth *infra*.

[4] *See, e.g.*, Tex. Prop. Code Ann. § 26.003 ("This chapter applies to an individual: (1) alive on or after September 1, 1987, or who died before September 1, 1987, but on or after January 1, 1937"); Okla. Stat. tit. 12, § 1448.H. ("A 'deceased personality' shall include, without limitation, any such natural person who has died within fifty (50) years prior to January 1, 1986."); Wash. Rev. Code § 63.60.020(2) ("A 'deceased personality' includes, without limitation, any such individual who has died within fifty years before January 1, 1998, or thereafter."); Cal. Civ. Code § 3344.1(b) ("The rights recognized under this section shall be deemed to have existed at the time of death of any deceased personality who died prior to January 1, 1985 …."); S.D. Codified Laws § 21-64-3 ("The provisions of this chapter apply to a personality who is deceased prior to July 1, 2015."); Ohio Rev. Code Ann. § 2741.03(B) ("The right of publicity in the persona of an individual who died on or after January 1, 1998, and whose domicile or residence was in this state on the date of the individual's death."); Ind. Code § 32-36-1-8 ("The rights apply to the personality whether the personality died before, on, or after July 1, 1994.").

3

in drafting the Act, the legislature declined to include similar retroactive language—indicating that they had no intent of creating a retroactive right.  Resp. 6 n.4.

Courts in other states have declined to imply a retroactive right of publicity where, as here, the statute is silent—even though these statutes, like the Act, ***applied to both living and deceased persons***.  In *Dillinger, LLC v. Electronic Arts Inc.*, 795 F. Supp. 2d 829, 834 (S.D. Ind. 2011), the plaintiff argued—similarly to Plaintiff here—that Indiana's right-of-publicity law should be read to apply to persons who died before its enactment because it defined "personality" as "a living or deceased natural person," and provided that the publicity rights endure for 100 years following the personality's death.  *Id.* at 833.  The Court rejected this argument, holding that:

> The statutory provisions, individually and collectively, . . . are ambiguous; they can be read equally to protect personalities who live and die after the statute's 1994 enactment, as they can be read to protect those who have ever lived.  Providing causes of action for the heirs of the millions of people who died between 1894 and 1994—*i.e.* during the 100 year post-death period of protection—would greatly expand the potential liabilities that the statute creates.

*Id.* at 834.  Ultimately, the court concluded that "given the existence of a reasonable alternative reading of the statute, the Court must presume that the Indiana Supreme Court would not endorse such a result but would instead adopt the narrower reading." *Id.*; *see also Todd v. Societe Bic, S.A.*, 21 F.3d 1402, 1412 (7th Cir. 1994) (en banc) ("When given a choice between an interpretation of [state] law which reasonably restricts liability, and one which greatly expands liability, we should

4

choose the narrower and more reasonable path (at least until the [state supreme court] tells us differently).").

The same is true here, where the scope of potential liability under the Act would drastically increase if the Court adopted Plaintiff's interpretation. If this were the law, any person who died after August 1, 1960—55 years before the Act's effective date—and at some point in their life lived in Alabama, would suddenly have a right of publicity under the Act. *See* Ala. Code § 6-5-771(2-3). As the *Dillinger* court found, it is much more reasonable—especially with no legislative authority to the contrary—to interpret the Act's definition of "person" as simply providing for a postmortem right for individuals who died after the Act's effective date. In other words, the Alabama legislature likely wanted to accommodate situations where, for example, if Person A died in 2016—after the Act came into effect—and Person B misappropriated Person A's likeness in 2017, then Person B could be held liable under the Act because Person A would fall under the Act's definition as a "deceased natural person." The Court should adopt this reasonable interpretation of the Act instead of reading the Act to grossly expand potential liabilities. *See Freeman v. Blue Ridge Paper Prods., Inc.*, 529 F. App'x 719, 728 (6th Cir. 2013) (when predicting state law, federal courts sitting in diversity "are obligated to proceed on the narrowest path possible").

5

Courts in California reached the same result as the *Dillinger* court. *See Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*, No. 2:05-cv-02200-MMM-E (C.D. Cal. May 14, 2007); *Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 991 n.9 (9th Cir. 2012).[5] *See also* Br. at 14-15. The fact that the legislatures of Indiana and California ultimately amended their right-of-publicity statutes to expressly provide for retroactivity further confirms that such action is properly in the realm of the legislature rather than the judiciary.

Plaintiff cites a single non-binding case from a Nevada district court to support his argument that the Court should construe the Act as applying retroactively based on the fact that it defines "person" to include "deceased natural person[s]." *See* Resp. 7 (citing *Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.*, 688 F. Supp. 2d 1148 (D. Nev. 2010)). This case is both distinguishable and an outlier, given that multiple courts, as detailed above, have reached the opposite conclusion. First, the *Fifty-Six Hope* Court reached its decision based on legislative history that indicated the express intent of the Nevada Legislature to create a retroactive right. *Id.* at 1163. Here, by contrast, no legislative history indicates any such intent on the part of the Alabama legislature. Additionally, the Nevada right-of-publicity statute materially

---

[5] Plaintiff attempts to argue that these cases are immaterial by summarizing a separate and irrelevant finding in the district court's opinion regarding the question of which state's law applied to Ms. Monroe's estate. Resp. 13-14. That issue has no bearing on the fact that the district court held that California's right-of-publicity statute, which at the time was silent as to retroactivity, could not be applied to the estate of a person who, as here, had died prior to the effective date of the statute.

differs from the Alabama Act in that it strictly requires successors-in-interest to publicly register postmortem rights within a short period of time after the person's death or else waive them, and bars successors from asserting such rights against any use that pre-dated their registration. *See* Nev. Rev. Stat. § 597.800(4). This requirement was designed to avoid the scenario here—where an estate is created years after a person's death to capitalize on postmortem fame. Because of the registration requirement, the *Fifty-Six Hope* Court's decision did not greatly expand the pool of potential litigants, as a similar decision would here.

### B. The Act is Substantive in Nature, Not Remedial.

In the same breath that Plaintiff argues that the Court should not apply the presumption against retroactivity because the Act is remedial in nature, Resp. 10-11, Plaintiff acknowledges that the Act ***created a postmortem right***, because "[p]rior to the passage of the Act, . . . Alabama courts . . . held that [the common law right of publicity] died with the person." *Id.* 11 (citing *Fitch v. Voit*, So. 2d 542 (Ala. 1993)). It is black letter law that statutes that create rights are substantive, not remedial. *See, e.g.*, *Kemp v. Britt*, 410 So. 2d 31, 33 (Ala. 1982) (holding that remedial legislation "does not ***create, enlarge***, diminish, or destroy contractual or vested rights but relate(s) only to remedies or modes or procedure . . . ." (emphasis added and citation omitted)); *see also Alabama Power Co. v. Dir. of Indus. Relations*, 54 So. 2d 786, 788–89 (Ala. Ct. App. 1951) (amendment creating new substantive rights did not

7

apply retroactively). Because the Act created a postmortem right, and statutes that create rights are substantive instead of remedial, the Court should apply the presumption against retroactivity here.

### C. Applying the Act Retroactively Would Contravene Probate Law.

Plaintiff fails to cite any authority for the proposition that a newly-created statutory right that came into existence after a person died may be added to his estate.[6] Alabama law is clear and to the contrary: "Wills speak only from the death of the testator, and must be construed as they would have been construed at the moment of death, and without regard to the consequences resulting from subsequent events, which were probably not foreseen or anticipated at the making of the will." *Blakeney v. Du Bose*, 167 Ala. 627, 634 (1910). Plaintiff also mistakenly asserts that Ala. Code § 43-8-223 supports his position because it states: "A will is construed to pass all property which the testator owns at his death including property acquired after the execution of the will." But as the statute's commentary makes clear, "after the execution of the will" refers specifically to property acquired by the testator after the date he executed his will, but before he died. *See* Commentary; *see also Blakeney*, 167 Ala. at 636; *Wagar v. Marshburn*, 241 Ala. 73, 78 (1941).[7]

---

[6] Restatement (Third) of Property (Wills & Don. Trans.) § 1.1 cmt. c, cited by Plaintiff, says nothing regarding property created by a statute enacted after death. Rather, the example it provides of the type of "property" that may be added is "an employee bonus awarded after death."

[7] That McLemore died without a will is irrelevant to this point. Intestacy does not impact the determination of what property is in the estate, only the manner of conveying it.

8

## II.     The *S-Town* Podcast Is Exempt From Liability Under the Act.

Plaintiff's theory that, even if *S-Town* is an artistic work under the Act (a point he does not contest in his motion), it is still actionable because it uses McLemore's indicia of identity "for purposes of trade," Resp. 14 (citing Ala. Code § 6-5-773(b)), is flat wrong.  First, Plaintiff offers no authority for his assertion that the "Act's phrase 'for the purposes of trade' comes from New York's right of publicity statute." Resp. 15.  The published Commentary to the Act states that this phrase "is based on the definition set out in the Restatement (Third) of Unfair Competition § 47 and comment c thereto."  Section 47 states: "[U]se 'for purposes of trade' does not ordinarily include the use of a person's identity in news reporting, commentary, entertainment, works of fiction or nonfiction, or in advertising that is incidental to such uses."  Comment c further elaborates that the right of publicity is not infringed by "use in entertainment and other creative works, including both fiction and nonfiction," including in an "unauthorized print or broadcast biography" or a "novel, play, or motion picture."  This language only underscores the Act's exemptions for works like *S-Town* and supports dismissal of Plaintiff's claims over the podcast as a matter of law.

Comment c also quashes Plaintiff's claim that he needs discovery about whether Defendants' "intent" was for "purposes of trade," explaining: "The fact that the publisher or other user seeks or is successful in obtaining a commercial

9

advantage from an otherwise permitted use of another's identity does not render the appropriation actionable."[8]  Further, Comment c clarifies that the "solely to attract attention" phrasing that forms the cornerstone of Plaintiff's argument refers to a use "solely to attract attention ***to a work that is not related to the identified person***"—for example, putting a celebrity's picture on the cover of an unrelated book.  In no way is the content of *S-Town* "unrelated" to McLemore.

To the extent Plaintiff claims to need discovery so he can determine ***how else*** McLemore's identity might have been "used" by Defendants, other than the seven-hour podcast that is properly before this Court on the pleadings, that line of inquiry (even if questionable) is not foreclosed by this motion.  Defendants seek a ruling at this juncture only on the contents of the podcast itself.  Such a ruling requires no discovery, is clearly mandated by the Act, and would significantly narrow the scope of this case going forward.

## **CONCLUSION**

For the aforementioned reasons, Defendants request that the Court grant their motion for judgment on the pleadings.

---

[8] The two New York cases Plaintiff cites (*Ali* and *Grant*) do not counsel otherwise.  Further, these 1970s federal decisions pre-date a series of cases from New York's highest court construing its right-of-publicity statute narrowly, with a broad exemption for editorial works.  *See, e.g., Arrington v. N.Y. Times Co.*, 55 N.Y.2d 433 (1982); *Stephano v. News Grp. Publ'ns, Inc.*, 64 N.Y.2d 174 (1984).  There is no question that *S-Town* would be protected from liability under New York law.

Dated:  June 25, 2019                    Respectfully submitted,

/s/ Constance M. Pendleton
Constance M. Pendleton (*pro hac vice*)
Alison Schary (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Ave., N.W., Suite 800
Washington, DC 20006
T 202.973.4200
F 202.973.4499

Dennis R. Bailey
Evans Bailey
RUSHTON, STAKELY, JOHNSTON & GARRETT, P.A.
184 Commerce Street
Montgomery, AL 36104
T 334.206.3234
F 334.481.0031

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 25, 2019, a copy of the foregoing was served by filing the same through the CM/ECF system, which will send a copy to the following individuals:

>Richard J. R. Raleigh, Jr.
>Christopher L. Lockwood
>Wilmer & Lee, P.A.
>100 Washington Street, Suite 100
>Huntsville, AL 35801
>(256) 533-0202
>rraleigh@wilmerlee.com
>clockwood@wilmerlee.com
>
>R. Cooper Shattuck
>Cooper Shattuck, LLC
>P.O. Box 3142
>Tuscaloosa, AL 35403
>(877) 442-6673
>cooper@coopershattuck.com

/s/ Constance M. Pendleton
Constance M. Pendleton