# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| CRAIG CARGILE, ADMINISTRATOR OF THE ESTATE OF JOHN B. MCLEMORE,<br><br>PLAINTIFF,<br><br>V.<br><br>SERIAL PRODUCTIONS, LLC; THIS AMERICAN LIFE PUBLIC BENEFIT CORPORATION; BRIAN REED; CHICAGO PUBLIC MEDIA, INC.; SHITTOWN, LLC; SERIAL PODCAST, LLC; AND AMERICAN WHATEVER, LLC,<br><br>DEFENDANTS. | CASE NO: 7:18-CV-01167-LSC<br><br>**OPPOSED MOTION**<br><br>JUDGE L. SCOTT COOGLER |

## DEFENDANTS' MOTION FOR A PROTECTIVE ORDER, OR IN THE ALTERNATIVE, TO QUASH THIRD-PARTY SUBPOENAS

Constance M. Pendleton (*pro hac vice*)
Alison Schary (*pro hac vice*)
Chelsea T. Kelly (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue, N.W.
Suite 800
Washington, DC 20006
T 202.973.4200
F 202.973.4499
conniependleton@dwt.com
alisonschary@dwt.com
chelseakelly@dwt.com

Dennis R. Bailey
Evans Bailey
RUSHTON, STAKELY, JOHNSTON & GARRETT, P.A.
184 Commerce Street
Montgomery, AL 36104
T 334.206.3234
F 334.481.0031
drb@rushtonstakeley.com
ebailey@rushtonstakeley.com

*Attorneys for Defendants*

## **CERTIFICATION OF GOOD FAITH CONFERRAL**

Pursuant to Federal Rule of Civil Procedure 26(c)(1), Defendants' counsel certify that they have conferred with Plaintiff's counsel in good faith in an effort to resolve this dispute without the Court's action. The parties engaged in a meet-and-confer telephonic conference on February 19, 2020 and were unable to reach a resolution.

## I.   INTRODUCTION

Plaintiff Craig Cargile brought this right of publicity suit in his capacity as Administrator of the Estate of John B. McLemore, seeking damages from the creators of the podcast *S-Town* – a seven-episode journalistic and expressive exploration of life in a small town in rural Alabama for which Mr. McLemore served as a source and subject. Plaintiff contends that *S-Town* violates Alabama's right of publicity statute, Ala. Code § 6-5-770 *et seq.* (the "Act"), because the podcast's narrative includes audio recordings of interviews between journalist Brian Reed and Mr. McLemore (and necessarily mentions Mr. McLemore's name, as a subject and source in the podcast), and because although it was available to the public free of charge, it was supported by third-party sponsors who paid for sponsorship messages/advertisements that interjected at a designated advertising break in episodes of the podcast.

1

In the course of discovery, Plaintiff has now admitted that *none* of the third-party sponsorship messages/advertisements that aired at intervals during the *S-Town* podcast at any time used Mr. McLemore's name, voice, or any other indicia of his identity. Ex. 1 (Pl. Am. Resp. to Defs. RFA). Plaintiff also concedes that he is not suing over an *S-Town* "movie" in this case. Ex. 2 (Cargile Dep.) at 96, 145. Nor could he: no movie has been made based on *S-Town*, and if one were to be made in the future, it would be expressly exempt from liability under the Act, which states that use of a person's indicia of identity in an "audiovisual work, motion picture, [or] film" is "a fair use and not a violation of [the Act]." Ala. Code § 6-5-773(b).

Nevertheless, on February 12, 2020, Plaintiff issued third-party document subpoenas to ten companies that either purchased sponsorship messages/advertisements to support *S-Town* or served as intermediaries in the purchase of such sponsorship messages/advertisements (the "Sponsor/Advertiser Subpoenas"). Plaintiff also served a third-party subpoena on Participant Media, a film production company, seeking documents relating to "a potential S-Town movie" (the "Participant Subpoena").[1]

---

[1] The ten Sponsor/Advertiser Subpoenas are attached as Exhibit 3 to this motion. The Participant Subpoena is attached as Exhibit 4 to this motion. For all of these subpoenas, Plaintiff did not specify a location for the production of the documents other than the headquarters of the third parties that were subpoenaed.

2

The Court should issue a protective order preventing Plaintiff from enforcing these third-party subpoenas for several reasons. *First*, the subpoenas do not seek information that is relevant, much less proportional, to any issue in this case. Plaintiff expressly admitted that none of the sponsorship messages/advertisements used Mr. McLemore's indicia of identity and that he is not making any claim over an *S-Town* movie. Given these admissions, it is unclear how any of the information demanded by these subpoenas is relevant. *Second*, these subpoenas seek documents from third parties that, on the face of the requests, should clearly be sought directly from Defendants – and, in fact, are duplicative of documents that Defendants ***already produced*** in discovery. Given that Plaintiff already has these documents (as Defendants informed Plaintiff during a pre-motion meet and confer) and already admitted none of the advertisements use Mr. McLemore's indicia of identity, there can be no conceivable basis for Plaintiff to proceed with these subpoenas other than to multiply the proceedings and harass third parties with whom Defendants have ongoing business relationships.

For these reasons, Defendants respectfully request that the Court issue a protective order preventing Plaintiff from enforcing these eleven third-party subpoenas, and further preventing him from issuing any similar subpoenas to additional third parties relating to the advertisements/sponsorship messages that he

has already admitted do not use Mr. McLemore's indicia of identity, and/or a future potential movie project that is not (and never could be) a basis for Plaintiff's claims.

## II.     FACTUAL BACKGROUND

### A.     Relevant Procedural History

Plaintiff filed his Complaint on July 12, 2018, claiming that the *S-Town* podcast violated the Act by allegedly including John B. McLemore's "indicia of identity on products, goods, merchandise, or services entered into commerce in this state, or for purposes of advertising, or selling, or soliciting purchases of, products, goods, or merchandise," without his consent. Dkt. 1-1 ¶¶ 33-36. Defendants moved to dismiss the Complaint, arguing that the *S-Town* podcast was not actionable because it fell squarely within the Act's exemption for artistic, expressive, or public interest works, and was protected by the First Amendment. *See generally* Dkt. 14-1.

On March 22, 2019, the Court denied the Motion to Dismiss, but stated that it was inclined to agree that the *S-Town* podcast "arguably falls within the Act's artistic work exemption." Dkt. 33 at 8 ("March 22 Order"). In particular, the Court stated it was "doubtful" Plaintiff could state a claim to the extent his theory of the case is that "Defendants' use of McLemore's indicia of identity in *S-Town* violates the Act because Defendants have received advertising revenues from each download of *S-Town*." *Id.* However, the Court construed paragraph 23 of Plaintiff's Complaint to

4

allege a violation not only based on the content of the podcast, but also based on the contents of unidentified advertisements (pleaded "on information and belief," and of which Plaintiff provided no examples) that "interject at regular intervals throughout each episode." *Id.* at 8-9. Because those advertisements were not in the record at that time, the Court stated it could not yet "conclusively determine" that Plaintiff failed to state a claim over their contents. *Id.* at 8.

### B. Defendants' Production of Documents

Since the Court's ruling, Defendants have produced all sponsorship messages/advertisements that at any time accompanied the *S-Town* podcast. ***Not a single sponsorship message/advertisement includes Mr. McLemore's name, voice, or any other indicia of his identity – and Plaintiff does not dispute this crucial fact.*** In his Amended Response to Defendant Serial Productions' First Request for Admission, Plaintiff conceded that "the [advertising] spots filed by Defendants with their Answer (ECF Nos. 35-1 to 35-25), as well as SERIAL 000129-134, ***do not contain McLemore's indicia of identity***." *See* Ex. 1 (emphasis added).[2] Plaintiff also testified at his deposition that if *S-Town* had no third-party sponsors, it would not violate the Act at all. Ex. 2 (Cargile Dep. Tr.) at 119. In other words, Plaintiff's

---

[2] *See also* Ex. 2 (Cargile Dep. Tr.) at 93-94 ("Q: Are you alleging [Mr. McLemore's] name is used specifically within any of the ads? A: Are you asking -- my position is not that it says John Brooks McLemore loves Rocket Mortgage, no.").

5

theory of this case is that *S-Town* violates the Act not based on the content of any individual advertisements, but on the mere fact that it was supported by advertising.

Defendants have also produced contracts with all of the sponsors for *S-Town* disclosing the amount paid by each, and hundreds of communications with sponsors/advertisers or their agents regarding the content of the *S-Town* podcast or the content of any specific sponsorship messages/advertisements – even though it is undisputed that none of these used Mr. McLemore's indicia of identity.

### C. Plaintiff Serves Third-Party Subpoenas Seeking Information that Is Irrelevant Given His Admissions and/or Duplicative of Defendants' Existing Production

Even with the benefit of significant discovery produced by Defendants, Plaintiff has still been unable to articulate how Defendants' work violated Mr. McLemore's rights under the Act. Accordingly, in an attempt to either embark on a fishing expedition or to try to harass Defendants and third parties with whom they have a business relationship, on February 12, 2020, Plaintiff's counsel notified Defendants' counsel that they would be serving document subpoenas on the following third-parties: Audible, Blue Apron, Casper, Quicken Loans, Spotify, Squarespace, Zip Recruiter, Ad Results Media, Participant Media, Performance Bridge Media, and Podtrac. With the exception of Participant Media, all of these entities either were sponsors of the *S-Town* podcast at some point in time or served as intermediaries in the process of purchasing sponsorships. The Sponsor/Advertiser

Subpoenas predominantly seek information from these third-parties *that Defendants have already provided to Plaintiff and relating to advertisements that Plaintiff already admitted do not use McLemore's indicia of identity*; namely, the amount of money any given sponsor paid and communications between the third parties and Defendants regarding such sponsorship/advertising. Specifically, the Sponsor/Advertiser Subpoenas request the following:

1. All emails (including attached documents) between You and any of the Defendants (or their employees, agents, or attorneys) related to John B. McLemore, the S-Town podcast, advertising on the S-Town podcast, or the present lawsuit.

2. Any Documents consisting of or containing samples or excerpts of the actual or proposed S-Town podcast or other Documents referencing the S-Town podcast or John B. McLemore or purportedly containing John B. McLemore's name, voice, or likeness, sent to you by any of the Defendants or their agent.

3. All contracts or agreements between You and any of the Defendants related to John B. McLemore, the S-Town podcast, or advertising on the S-Town podcast.

4. Documents showing the amount of money You have spent for advertising on the S-Town podcast.

5. Documents showing or estimating Your return on investment for advertising on the S-Town podcast.

6. Any agreements by any of the Defendants to indemnify You for potential liability related to Your advertising on the S-Town podcast.

*See* Ex. 3.

Plaintiff's third-party subpoena to Participant Media seeks:

7

1. All e-mails (including attached documents) between You and any of the Defendants (or their employees, agents, or attorneys) related to John B. McLemore, the S-Town podcast, a potential S-Town movie or other audiovisual project, or the present lawsuit.

2. Any Documents consisting of or containing samples or excerpts of the actual or proposed S-Town podcast or other Documents referencing the S-Town podcast or John B. McLemore or purportedly containing John B. McLemore's name, voice, or likeness, sent to you by any of the Defendants or their agents.

3. All contracts or agreements between You and any of the Defendants related to John B. McLemore, the S-Town podcast, a potential S-Town movie or other audiovisual project, or the present lawsuit.

*See* Ex. 4.  No movie based on *S-Town* has been released, and Plaintiff admitted at his deposition that this action does not assert any claim based on a movie and that any such claim would be "speculative."  Ex. 2 (Cargile Dep. Tr.) at 95-96, 145.

### III.  ARGUMENT

Under Federal Rule of Civil Procedure 26(c)(1), a "party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . ."  The Rule provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including, among others: "(A) forbidding the disclosure or discovery; . . . [and] (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters . . . ."  *Id.*  Good cause represents the "sole criterion" for assessing the propriety of a protective order, and "it generally signifies a sound basis or legitimate need to take judicial action."  *In re*

8

*Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987). The Eleventh Circuit has also "superimposed a 'balancing of interests' approach to Rule 26(c)," *id.*, which "requires the district court to balance the party's interest in obtaining access against the other party's interest in keeping the information [from production or disclosure]." *Chicago Trib. Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1313 (11th Cir. 2001). Further, where as here, the motion for a protective order "involves nonparties, the Court should also consider their interests and whether the information can be obtained from another source." *Morrow v. Flowers Foods, Inc.*, No. 3:07-cv-617-MHT, 2008 WL 11511782, at *1 (M.D. Ala. May 28, 2008).

Although Rule 26(c) does not explicitly list irrelevance or overbreadth as grounds for good cause to prevent enforcement of a subpoena, courts have held that "the scope of discovery under a subpoena mirrors the scope of discovery under Rule 26[b]." *Roche Diagnostics Corp. v. Priority Healthcare Corp.*, No. 2:18-cv-01479-KOB-HNJ, 2019 WL 4686352, at *4 (N.D. Ala. Feb. 12, 2019); *see also* Fed. R. Civ. P. 26(b)(1) (providing that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."). Accordingly, "the court must examine whether a request contained in a subpoena duces tecum is overly broad or seeking irrelevant information under the same standards set forth in Rule 26(b) . . . ." *Equal Emp't Opportunity Comm'n v. AutoZone, Inc.*, No. CA 06-0607-KD-C, 2007 WL 9717741,

9

at *2 (S.D. Ala. Aug. 3, 2007); *see also Gemstone Foods, LLC v. AAA Foods Enterps. Inc.*, No. 5:15 CV-1179-MHH, 2019 WL 4887507, at *4 (N.D. Ala. Sept. 4, 2019) (in ruling on a motion for a protective order, the Court should balance "relevance and proportionality" under Rule 26(b)). Parties "clearly have standing to move for a protective order if [third-party] subpoenas seek irrelevant information." *Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005); *see also Precision Aviation Grp., Inc. v. Prime Indus. Inc.*, No. 1:16-CV-3182-TCB, 2017 WL 2903361, at *2 (N.D. Ga. June 16, 2017) ("Rule 26(c) permits a party to object to a subpoena to a non-party on the basis that it seeks irrelevant material . . . .").

Here, there is good cause for the Court to enter a protective order under Rule 26(c) preventing Plaintiff from enforcing the third-party subpoenas issued in this case because: (1) the subpoenas seek wholly irrelevant information, especially in light of Plaintiff's admission that the third-party advertisements and sponsorship messages for *S-Town* **do not include Mr. McLemore's indicia of identity**; and (2) the subpoenas seek documents that are duplicative of materials requested and received from Defendants.[3]

---

[3] In the alternative, Defendants request that the Court quash the third-party subpoenas under Federal Rule of Civil Procedure 45(d)(3), which provides that a district court "must quash or modify a subpoena that . . . subjects a person to undue burden." Defendants have standing to move to quash these third-party subpoenas because they maintain a personal right in the subject matter requested in the subpoenas—that is, sensitive commercial, financial information regarding Defendants' sponsorship/advertising revenue. *See Roche Diagnostics Corp.*, 2019 WL 4686352,

10

### A. All of the Third-Party Subpoenas Seek Wholly Irrelevant Information.

Courts routinely find good cause to enter protective orders preventing enforcement of third-party subpoenas upon determining that they seek irrelevant information or information not proportional to the needs of the case. *See, e.g.*, *Auto-Owners Ins. Co.*, 231 F.R.D. at 430 (finding good cause to grant defendants' motion for a protective order "to prevent the overbroad discovery of the non-parties' finances and enter[ing] a protective order as to the financial information sought by the subpoenas"); *see also Agilysys, Inc. v. Hall*, No. 1:16-CV-03557-ELR, 2018 WL 1229990, at *5-7 (N.D. Ga. Jan. 11, 2018) (granting defendant's motion for a protective order quashing two non-party subpoenas upon finding that the subpoenas sought information that was both overbroad and irrelevant to the case); *Psychic Readers Network, Inc. v. Take-Two Interactive Software, Inc.*, No. 17-61492-CIV, 2018 WL 7048217, at *2 (S.D. Fla. Oct. 1, 2018) (granting in part defendants' motion for a protective order upon finding that some of the items that plaintiff sought

---

at *6 (noting that a party possesses standing to move to quash a non-party subpoena if it "maintains a personal right or privilege in the subject matter requested in the subpoena").  However, Defendants acknowledge that the proper court in which to bring a Rule 45(d) motion to quash is "the court for the district where compliance is required."  Fed. R. Civ. P. 45(d)(3)(A).  Here, it is unclear exactly where compliance is required because Plaintiff listed the addresses of the third parties' corporate headquarters as the places of production.  *See* Exs. 3-4.  He did not indicate how the third parties are meant to transmit the requested documents to him.  Due to this uncertainty, Defendants assert this motion predominantly as a motion for a protective order under Rule 12(c), but preserve their right to move to quash the subpoenas under Rule 45(d), if it later becomes clear that compliance is sought in this District.

11

in the third-party subpoenas were "not relevant to any parties' claims or defenses in this case").

Here, Plaintiff has already expressly admitted in response to a request for admission that the advertisements that accompanied the *S-Town* podcast do not contain Mr. McLemore's indicia of identity. *See* Ex. 1 at 1-2. Plaintiff further conceded that his only argument for why the sponsorship messages/advertisements are actionable is that they were aired within the *S-Town* podcast, which included Mr. McLemore's indicia of identity. *Id.* at 2. Well-established case law and the express language of the Act demonstrate that Plaintiff cannot succeed on such a theory of liability[4] – and indeed, this Court has already expressed skepticism about this theory of Plaintiff's case. March 22 Order at 8 ("Cargile alleges that Defendants' use of McLemore's indicia of identity in S-Town violates the Act because Defendants have received advertising revenues from each download of S-Town. To the extent Cargile brings suit on this ground, the Court is doubtful that this would be sufficient to state a claim under this Act, given that S-Town arguably falls within the Act's artistic work exemption."). Because the advertisements do not contain Mr. McLemore's

---

[4] *See* Ala. Code § 6-5-773(b) (exempting from liability not only artistic and expressive works, but also the "***advertising or promotion of the same***" (emphasis added)); *see also, e.g.*, *Time, Inc. v. Hill*, 385 U.S. 377, 397 (1967) (noting that just because "books, newspapers, and magazines are published and sold for profit does not prevent them from being a form of expression whose liberty is safeguarded by the First Amendment"); *Hoffman v. Capital Cities/ABC, Inc.*, 255 F.3d 1180, 1185 (9th Cir. 2001) (photo in magazine feature article was not commercial speech notwithstanding that magazine also included advertisements and a "shopper's guide"); *see also* Dkt. 14-1 at 22-23; Dkt. 32 at 11-12 (citing cases).

12

indicia of identity and therefore are not actionable, any discovery regarding the advertisements – let alone broad requests for, *e.g.*, "[a]ll emails" between the third-parties and "any of the Defendants . . . related to John B. McLemore, the S-Town podcast, advertising on the S-Town podcast, or the present lawsuit" – is irrelevant to the case. Ex. 3. The Court should enter a protective order preventing enforcement of the subpoenas on this basis. *See Auto-Owners Ins. Co.*, 231 F.R.D. at 430; *see also Agilysys, Inc.*, 2018 WL 1229990, at **5-7.

Plaintiff's subpoena to Participant Media also seeks irrelevant information because there currently exists no movie based on the *S-Town* podcast, and thus, Plaintiff cannot claim a right to non-existent revenue.[5] Further, even if a movie did exist, the Act expressly exempts movies from liability. *See* Ala. Code § 6-5-773(b) (exempting from liability "artistic or expressive work[s], such as a . . . literary work, theatrical work, musical work, ***audiovisual work, motion picture, film***, television program, radio program or the like . . . or any advertising or promotion of the same" (emphasis added)). This exemption is consistent with the First Amendment and decisions from courts throughout this country that reject a right of publicity cause of action for biographies, or use of a person's life story, in movies, books, and other

---

[5] The Participant Media Subpoena seeks communications and contracts related to "a potential S-Town movie or other audiovisual project." Ex. 4.

13

expressive works.[6] Thus, there are no possible grounds upon which a movie based on the *S-Town* podcast could be actionable under the Alabama Right of Publicity Act – meaning that the discovery sought is not relevant to any claim or defense in this case.

### B. The Advertiser/Sponsor Subpoenas Seek Documents and Information that Plaintiff Already Possesses from Defendants.

Courts have found good cause to enter a protective order preventing enforcement of a third-party subpoena where the party serving the subpoena either already possesses the information it seeks, or can readily acquire it elsewhere. *See Morrow*, 2008 WL 11511782, at *1 (granting defendants' motion for a protective order quashing third-party subpoenas upon determining that "the information sought is more appropriately requested from defendants prior to seeking it from nonparties"); *see also Jeld-Wen, Inc. v. Nebula Glasslam Int'l, Inc.*, No. 07-22326-CIV, 2008 WL 11333259, at *4 (S.D. Fla. Mar. 14, 2008) (granting in part

---

[6] *See, e.g.*, *Esch v. Universal Pictures Co.*, No. 6:09-cv-02258-JEO, 2010 WL 5600989, at *5 (N.D. Ala. Nov. 2, 2010) (dismissing common-law right of publicity claim over character in movie, holding that "[w]orks of artistic expression such as movies, plays, books, and songs are protected by the First Amendment" and the trailer for the movie was similarly nonactionable as "part of a protected expressive work"); *Thoroughbred Legends, LLC v. The Walt Disney Co.*, No. 1:07-CV-1275-BBM, 2008 WL 616253, at *12 (N.D. Ga. Feb. 12, 2008) (dismissing commercial misappropriation claim over characters in movie allegedly based on plaintiffs, holding that movie and trailer were protected by the First Amendment); *Sarver v. Chartier*, 813 F.3d 891, 905 (9th Cir. 2016) (dismissing right of publicity claim by army sergeant who claimed he was portrayed in the movie *The Hurt Locker*); *Matthews v. Wozencraft*, 15 F.3d 432 (5th Cir. 1994) (rejecting right of publicity claim on free speech grounds regarding use of former police officer's identity in movie and novel); *Alfano v. NGHT, Inc.*, 623 F. Supp. 2d 355 (E.D.N.Y. 2009) (dismissing right of publicity claim of plaintiff depicted with John Gotti in documentary about organized crime in New York). *See also* Dkt. 14-1 at 11-13 & n.8 (citing cases).

14

defendant's motion for a protective order by striking from plaintiff's third-party subpoenas requests for documents "duplicative of those already produced by [another party] in this case"). Indeed, courts are "empowered to limit the frequency or extent of otherwise-allowable discovery where . . . the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." *Equal Emp't Opportunity Comm'n v. Jack Marshall Foods, Inc.*, No. CV 09-00160-WS-N, 2009 WL 10704882, at *2 (S.D. Ala. Aug. 4, 2009) (citing Fed. R. Civ. P. 26(b)(2)(C)), *aff'd sub nom. E.E.O.C. v. Jack Marshall Foods, Inc.*, No. CIV.A. 09-0160-WS-M, 2010 WL 55635 (S.D. Ala. Jan. 4, 2010).

Here, Defendants have already produced to Plaintiff the information he seeks in the Sponsor/Advertiser Subpoenas. The subpoenas seek: (1) information regarding the amount of money that the third parties paid Defendants to air sponsorship messages/advertisements for their companies or products during the *S-Town* podcast; (2) the contracts between the third parties and Defendants memorializing these payments; and (3) communications between the third parties and Defendants regarding these sponsorship messages/advertisements. *See generally* Ex. 3. As noted above, Defendants already produced contracts with these advertisers/sponsors disclosing the amount paid by each, as well as emails between Defendants and advertisers regarding the *S-Town* podcast, and contents of the

15

advertisements (even though none of those advertisements included Mr. McLemore's indicia of identity). Plaintiff has no reasonable basis to burden third parties with responding to a subpoena for documents that he already possesses from Defendants.

## IV. CONCLUSION

For the aforementioned reasons, Defendants request that the Court grant their motion for a protective order quashing or denying enforcement of Plaintiff's Third-Party Subpoenas and further preventing him from issuing any similar subpoenas to additional third parties.

Dated: March 3, 2020                               Respectfully submitted,

/s/ Constance M. Pendleton
Constance M. Pendleton (*pro hac vice*)
Alison Schary (*pro hac vice*)
Chelsea T. Kelly (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Ave., N.W., Suite 800
Washington, DC 20006
T 202.973.4200
F 202.973.4499

Dennis R. Bailey
Evans Bailey
RUSHTON, STAKELY, JOHNSTON & GARRETT, P.A.
184 Commerce Street
Montgomery, AL 36104
T 334.206.3234

F 334.481.0031

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 3, 2020, a copy of the foregoing was served by filing the same through the CM/ECF system, which will send a copy to the following individuals:

>Richard J. R. Raleigh, Jr.
>Christopher L. Lockwood
>Wilmer & Lee, P.A.
>100 Washington Street, Suite 100
>Huntsville, AL 35801
>(256) 533-0202
>rraleigh@wilmerlee.com
>clockwood@wilmerlee.com
>
>R. Cooper Shattuck
>Cooper Shattuck, LLC
>P.O. Box 3142
>Tuscaloosa, AL 35403
>(877) 442-6673
>cooper@coopershattuck.com

>/s/ Constance M. Pendleton
>Constance M. Pendleton